**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC JOHNSON | : | |
| | : | |
| Appellant | : | No. 2523 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004295-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC JOHNSON | : | |
| | : | |
| Appellant | : | No. 2525 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004296-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC JOHNSON | : | |
| | : | |
| Appellant | : | No. 2528 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004297-2021

J-S09027-26

MEMORANDUM BY LANE, J.:                          **FILED JUNE 9, 2026**

Eric Johnson ("Johnson") appeals from the judgment of sentence imposed following his convictions for aggravated assault, sexual assault, indecent assault by forcible compulsion, simple assault, and possessing instruments of crime ("PIC").[1]  We affirm.

The trial court summarized the relevant facts as follows:

> . . . Johnson assaulted Dominique Coates [("the Victim")] on three occasions.  At the time of the assaults, . . . Johnson and [the Victim] were not legally married but had been in a [Muslim] marriage for about a year.  At the time of the last two assaults, [the Victim] was pregnant with . . . Johnson's daughter.
>
> The first assault occurred during an argument [that the Victim] and . . . Johnson were having on October 2, 2019.  During the argument, [the Victim] punched . . . Johnson in the face one time.  . . . Johnson then punched [the Victim] in the face, and she fell to the ground.  While [the Victim] was on the ground, . . . Johnson punched her in the face about seven or eight more times, causing her to sustain severe injuries.  The next morning, [the Victim] went to the hospital where she underwent surgery to repair a facial fracture and have numerous teeth extracted.
>
> [The Victim] initially told the hospital [staff] she sustained her injuries as the result of "a robbery gone bad."  She ultimately told the hospital [staff] what actually transpired, but she at one point indicated that her husband, Eric, and at another point her boyfriend, Abdul, assaulted her.  . . . Johnson was in the room with her at the hospital when she made these statements.  At trial, [the Victim] explained that she gave contradictory accounts of the incident because . . . Johnson made her fearful that she was legally at fault since she was the aggressor in the incident.  She

_____

* Former Justice specially assigned to the Superior Court.

[1]  **See** 18 Pa.C.S.A. §§ 2702(a)(1), 3124.1, 3126(a)(2), 2701(a)(1), and 907(a).

- 2 -

was concerned that . . . Johnson would retaliate against her if she told the truth.

Less than three months later, on December 23, 2019, . . . Johnson sexually assaulted [the Victim]. [The Victim] had taken a shower and was in bed. [The Victim's] two-year-old child and months-old baby were in bed with her. At that juncture, . . . Johnson, who had keys to the residence, entered the house, proceeded to [the Victim's] bedroom, instructed the two-year-old to go into a different bedroom and started "rubbing on" [the Victim's] legs and breasts to initiate sex with her. [The Victim] objected, but . . . Johnson did not stop his advances. [The Victim] asked . . . Johnson whether he was going to rape her in front of her son. . . . Johnson "laughed it off" and proceeded to put his penis in her vagina while she was "telling him no."

[The Victim] did not speak to . . . Johnson again until he showed up at her home on December 26, 2019. On that occasion, . . . Johnson grabbed [the Victim's] phone from the bed. . . . Johnson and [the Victim] began struggling over the phone. . . . Johnson pushed [the Victim] to the ground and pulled out a knife. [The Victim] tried to grab the knife, lacerating her left thumb, index finger, and the area between those two fingers in the process. . . . Johnson then stabbed [the Victim] in the leg. After the stabbing, one of [the Victim's] children called the police.

When the police arrived, [the Victim] told them she cut herself with a broomstick. [The Victim] did not tell the police what really occurred because she knew . . . Jonson was still in the house or the backyard. After the police left, [the Victim] went to the hospital. There, she told the police what actually happened. The next day, [the Victim] made a formal report of the incidents to detectives.

Trial Court Opinion, 2/27/25, at 2-3 (citations omitted).

At trial docket CP-51-CR-0004295-2021 ("Docket 4295-2021"), in connection with the stabbing, the Commonwealth charged Johnson with, *inter alia,* aggravated assault, simple assault, and PIC. At trial docket CP-51-CR-0004296-2021 ("Docket 4296-2021"), with respect to the repeated punches

to the Victim's face, the Commonwealth charged Johnson with, *inter alia,* aggravated assault. Lastly, at trial docket CP-51-CR-0004297-2021 ("Docket 4297-2021"), the Commonwealth charged Johnson with, *inter alia,* rape, sexual assault, and indecent assault by forcible compulsion. The trial court granted the Commonwealth's motion to consolidate these matters, without objection from Johnson.

The case proceeded to a jury trial in January 2023. The Victim testified consistently with the trial court's above summary. She further testified that Johnson's Muslim name was "Abdul," and that "[h]e goes by Eric and Abdul." N.T., 1/4/23, at 129. She explained that when she told hospital personnel in October 2019 that "Abdul" assaulted her, she was referring to Johnson. *Id*. at 116, 123, 129. Philadelphia Police Officer Brigid Martin ("Officer Martin") testified that she responded to a report of a disturbance at the Victim's residence on December 26, 2019. The Victim answered the door and stated that she did not call the police. Officer Martin interviewed the Victim later that day at the hospital, where the Victim told her she did not report the stabbing to police at her house because Johnson "was still on location and she was afraid to do so." N.T., 1/4/23, at 165. Philadelphia Police Officer Kevin Tilghman ("Officer Tilghman") testified that on December 26, 2019, he observed the Victim in the emergency room with lacerations to her left hand and thigh. The Victim told Officer Tilghman that Johnson stabbed her and explained that she did not tell police when they responded to the 911 call at her house because "she was afraid to tell the truth because the offender was

still on location." *Id*. at 176-77. Philadelphia Special Agent Zachary Jordan ("Agent Jordan"), who was working as a detective in December 2019, testified that he interviewed the Victim at the police station the day after the stabbing incident. The Victim reported "a repeated pattern of abuse involving the same male, [Johnson]. And she detailed two specific incidents occurring in October of 2019 that same year and . . . on December 23[,] 2019." *Id*. at 185-86. Johnson did not testify in his own defense.

At the conclusion of trial, the jury convicted Johnson of one count of aggravated assault (Docket 4296-2021); sexual assault and indecent assault by forcible compulsion (Docket 4297-2021); and simple assault and PIC (Docket 4296-2021). The jury found Johnson not guilty of rape (Docket 4297-2021) and one count of aggravated assault (Docket 4296-2021). The trial court ordered a pre-sentence investigation ("PSI") report and a forensic intensive recovery ("FIR") evaluation. On March 25, 2024, the trial court imposed an aggregate sentence of 166 to 360 months' imprisonment followed by five years' of probation.

Johnson filed a timely post-sentence motion and the trial court held a hearing on the matter. At the hearing, Johnson argued that the trial court did not consider Johnson's "potential for rehabilitation" and personal history when it imposed his sentences. N.T., 6/20/24, at 17. He averred that the sentence imposed on the aggravated assault charge — ninety to 180 months' incarceration — was in the "far upper range of the guidelines," which recommended a minimum term of imprisonment of seventy-two to ninety

months' incarceration. *Id*. at 17-18. The trial court held the matter under advisement, and ultimately denied the motion on August 29, 2024. Johnson subsequently filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925(b).

Johnson raises the following issues for our review:

1. Whether the evidence presented at trial was sufficient to establish each and every element of the crimes for which [Johnson] was convicted?

2. Whether the jury verdict was against the weight of the evidence?

3. Whether the trial court erred by permitting joinder of cases in violation of [Johnson's] due process rights?

4. Whether the sentencing court abused [its] discretion by imposing manifestly excessive maximum sentences that were not based upon the gravity of the violation, the extent of [Johnson's] record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S.[A.] Section 9721 of the Sentencing Code?

Johnson's Brief at 8.

In his first issue, Johnson purports to challenge the sufficiency of the evidence supporting his convictions at all three dockets. Before we review the sufficiency challenge on its merits, we must first determine whether Johnson preserved this issue for appellate review. It is well-established that "any issues not raised in a [Rule] 1925(b) statement will be deemed waived" for appellate review. *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). The purpose of Rule 1925(b) is:

> to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process. When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all.

***Commonwealth v. Lemon***, 804 A.2d 34, 37 (Pa. Super. 2002) (citations, quotation marks, and unnecessary capitalization omitted).

Moreover, when an appellant seeks to raise a challenge to the sufficiency of the evidence, "the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient." ***Commonwealth v. Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020) (citation omitted). This is particularly important in cases where the defendant "was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (citation omitted). "Where a 1925(b) statement does not specify the allegedly unproven elements, the sufficiency issue is waived." ***Bonnett***, 239 A.3d at 1106 (citation and ellipses omitted).

In his concise statement, the only element of any crime that Johnson claimed went unproven at trial was the identify element for his aggravated assault conviction at Docket 4296-2021. In this regard, he narrowly claimed: "The evidence presented suggested that a person other than [Johnson] was

the actual perpetrator of the assault." Concise Statement, 4/3/24, at unnumbered 1. Thus, Johnson confined his sufficiency challenge solely to the October 2019 assault where the Victim first blamed an unknown assailant, and then accused "Abdul," before identifying Johnson in December 2019. As a result, the trial court's opinion addressed only this issue. We therefore conclude that Johnson waived his challenge to the sufficiency of the evidence for any other element of assault, and for all of his other convictions. Accordingly, we will review his sufficiency challenge only with respect to his identity as the perpetrator of the aggravated assault against the Victim in October 2019.

When considering a challenge to the sufficiency of the evidence:

[W]e evaluate the record in light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of

a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted).

Importantly, "a sufficiency of the evidence review *does not* include an assessment of credibility of testimony offered by the Commonwealth." *Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa. Super. 2022) (citation omitted) (emphasis added). "An appellant's challenge to the sufficiency of the evidence must fail, where an appellant phrases an issue as a challenge to the sufficiency of the evidence but the argument that the appellant provides goes to the weight of the evidence." *Id*.

The Crimes Code[2] defines aggravated assault, in pertinent part, as follows: "A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss of impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. We note that Johnson does not dispute that the Victim suffered

_____

[2] *See* 18 Pa.C.S.A. §§ 101-9546.

- 9 -

seriously bodily injury; rather, he challenges only her identification of him as the perpetrator.

Here, Johnson does not contend that the Commonwealth failed to present any evidence that he was the perpetrator. Indeed, he concedes that the Victim identified him as the perpetrator of the aggravated assault when she met with detectives in December 2019 and again at trial. Instead, Johnson's arguments in support of his sufficiency claim simply highlight the Victim's inconsistent statements and attack the credibility of her testimony. We emphasize that a review of the sufficiency of the evidence "***does not*** include an assessment of credibility of testimony." ***See Juray***, 275, A.3d at 1043 (emphasis added). Thus, we conclude that because Johnson's purported sufficiency claim in fact goes to the weight of the evidence, his challenge to the sufficiency of the evidence must fail. ***Id***.

In his second issue, Johnson claims that the verdict was against the weight of the evidence. Preliminarily, we must determine whether Johnson preserved this claim for our review. In order to preserve a challenge to the weight of the evidence, Pa.R.A.P. 607(A) requires a defendant to raise such a challenge with the trial court in a motion for a new trial that is presented: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or

it will be waived." ***Id***. *Comment*. While an appellant must typically comply with the specificity requirements of Rule 1925(b)(4) when filing a concise statement, our Court has declined to find waiver of a weight claim based on a vague concise statement where the appellant raised the claim in a post-sentence motion in greater detail and "the claim was readily understandable from context." ***Commonwealth v. Rogers***, 250 A.3d 1209, 1225 (Pa. 2021).

Although Johnson included only a boiler-plate weight claim in his concise statement, he did raise this claim with sufficient detail in his post-sentence motion, arguing that "[t]he credible evidence presented in this case was insufficient on its face to support the charge of aggravated assault." Post-Sentence Motion, at ¶ 8. Moreover, the trial court was able to apprehend Johnson's weight claim with respect to his aggravated assault conviction and addressed the substance of it in its opinion. Therefore, we find that Johnson preserved the weight claim with respect to his aggravated assault conviction at Docket 4296-2021.

Our standard of review when considering a challenge to the weight of the evidence is well settled:

> A motion for new trial on grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would

- 11 -

not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict was against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (brackets and citation omitted). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court." ***Id***. at 546 (citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim ***is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence***. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in the original).

Johnson argues that the jury's guilty verdict on the charge of aggravated assault "completely ignore[d] the lack of compelling evidence, particularly the lack of any credible testimonial evidence against [Johnson] beyond the duplicitous statements of [the Victim]." Johnson's Brief at 20. He avers that the "the medical records presented at trial [did] not bolster [the Victim's] credibility or establish [Johnson's] guilt" and that the Victim's "initial statements to police or medical personnel . . . were completely contradictory to her testimony at trial." *Id*.

The trial court considered Johnson's weight claim and determined it lacked merit. The court reasoned:

> While there were inconsistencies in the witness'[s] earlier statements when compared to her trial testimony, including giving different reasons for her injures and naming her perpetrator as "Abdul," [the Victim] provided explanations for these inconsistencies, including her ongoing fear of retribution from . . . Johnson and [the] fact that . . . Johnson also used the name Abdul. The jury had the opportunity to consider these inconsistencies and found [the Victim's] testimony credible. It would be improper for the [trial court] to disregard the jury's determination. The evidence in support of the guilty verdicts against . . . Johnson was not so tenuous, vague, and uncertain that the resulting verdicts shocked the conscience, nor did the verdicts deny justice. Hence, the verdicts were not against the weight of the evidence.

Trial Court Opinion, 2/27/25, at 13 (internal citations and brackets omitted).

After careful review, we discern no abuse of discretion by the trial court in denying Johnson's challenge to the weight of the evidence. As explained above, this Court will give the gravest consideration to the findings and reasons advanced by the trial court judge when reviewing its determination

as to whether the verdict is against the weight of the evidence. *See Clay*, 64 A.3d at 1055. Moreover, one of the least assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence. *Id*.

Here, Johnson's claim that the verdict was against the weight of the evidence is based on the Victim's inconsistent identification of the perpetrator of the assault. The Victim first told the police that she was assaulted during "a robbery gone bad," then told hospital personnel that it was a man named "Abdul," before finally identifying Johnson as her attacker to detectives and again at trial. N.T., 1/4/23, at 52, 90, 116. The Victim explained that she did not immediately identify Johnson as her attacker because she was afraid of him. She further explained that Johnson's Muslim name was in fact "Abdul," and she was referring to him when she told hospital staff that Abdul attacked her. Johnson essentially asks this Court to reweigh the evidence, and to give all weight to the Victim's initial report that she was assaulted during "a robbery gone bad," and accord no weight to the Victim's testimony that Johnson, also known as Abdul, committed the aggravated assault. This we cannot do, as this Court may not reweigh the evidence. *See Talbert*, 129 A.3d at 545-46 (holding that the weight to be accorded to the evidence and testimony presented at trial was exclusively for the fact-finder, which was free to believe all, part, or none of the evidence and testimony and to determine credibility).

Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim. In this regard, we discern no abuse

of such discretion. The trial court determined that, although the jury was presented with the Victim's prior inconsistent identifications of her attacker, the jury considered these inconsistencies, together with the Victim's explanation that she was afraid of Johnson and that his Muslim name was Abdul, and found the Victim to be credible. Thus, as we discern no abuse of discretion by the trial court denying Johnson's weight challenge, Johnson's second issue merits no relief.

In his third issue, Johnson claims that the trial court abused its discretion by permitting joinder of his three cases. Once again, we must determine whether Johnson preserved this issue for our review. It is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Where a defendant fails "to object to the consolidation by either a pretrial motion for severance or by an objection at trial," and fails to raise the issue in a post-trial motion, the issue is deemed waived. **Commonwealth v. Thomas**, 333 A.2d 856, 857 (Pa. 1975) (citation omitted).

The trial court deemed this issue waived because Johnson "did not contest the motion to consolidate" before the trial court. Trial Court Opinion, 2/27/25, at 14. After careful review, we agree with the trial court that Johnson's claim challenging consolidation is waived. The record shows that the Commonwealth filed a motion to consolidate Johnson's three criminal matters. Johnson did not oppose the consolidation. In fact, the trial court's order granting consolidation explicitly noted: "Defense is not contesting this

- 15 -

Motion to Consolidate." Trial Court Order, 2/9/22. At no time thereafter did Johnson file a motion to sever or raise any objection to the consolidation. Furthermore, he did not include this issue in his post-sentence motion. Thus, Johnson is attempting to challenge consolidation for the first time on appeal. Since Johnson did not raise this issue before the trial court, we conclude that his claim challenging consolidation is waived. Accordingly, no relief is due on Johnson's third issue.

In his final issue, Johnson argues that the trial court erred by imposing an excessive sentence without due consideration of mitigating circumstances. This issue presents a challenge to the discretionary aspects of his sentence, which is not reviewable as of right. *See **Commonwealth v. Mastromarino***, 2 A.3d 581, 585 (Pa. Super. 2010) (citation omitted). To invoke this Court's jurisdiction, an appellant challenging the discretionary aspects of his sentence must satisfy a four-part test:

> [W]e conduct a four-part analysis to determine (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4)whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Maury***, 992 A.2d 162, 170 (Pa. Super. 2010) (some citations omitted, brackets in original). Challenges to "the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings;"

otherwise, the challenge is waived. ***Commonwealth v. Perzel***, 291 A.3d 38, 47 (Pa. Super. 2023) (citations omitted).

Here, Johnson filed a timely notice of appeal and he preserved his claims in the post-sentence motion and at the post-sentence motion hearing. He also included in his brief a Rule 2119(f) statement. However, we must initially determine whether Johnson properly preserved for our review the issues raised in the Rule 2119(f) statement.

Johnson purports to raise the following sentencing issues: (1) "[t]he March 25, 2024 sentences imposed were made without proper consideration of the general guidelines provided by the Pennsylvania state legislature;" (2) the trial court's actions "were inconsistent with the provisions of the Sentencing Code and were contrary to the fundamental norms underlying the sentencing process;" and (3) "the sentences imposed were not based upon the gravity of the violation, the extent of [Johnson's] record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors of section 9721 of the Sentencing Code." Johnson's Brief at 9 (unnecessary capitalization omitted).

Our Court has explained the requirements of Rule 2119(f) as follows:

> Rule 2119(f) requires the appellant to "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). To establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. The determination of whether a particular case raises a substantial question is to be evaluated

- 17 -

on a case-by-case basis. This Court has recognized that we cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists.

Consequently, bald assertions of sentencing errors are insufficient to establish a substantial question for review; rather, an appellant must support his assertions by articulating the way in which the court's actions violated the sentencing code. This Court has held that a Rule 2119(f) statement is inadequate if it merely contains incantations of statutory provisions and pronouncements of conclusions of law. Where a defendant merely asserts that his sentence is inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing scheme without explaining how or why, this Court cannot determine whether he has raised a substantial question.

*Commonwealth v. Neafie*, 341 A.3d 813, 818 (Pa. Super. 2025) (citations, brackets, and some quotation marks omitted). In addition, a Rule 2119(f) statement "must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates." *Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004) (citation omitted).

In the first two sentencing claims set forth in Johnson's Rule 2119(f) statement, Johnson baldly asserts that the "sentences imposed were made without proper consideration of the general guidelines provided by the Pennsylvania state legislature" and were "contrary to the fundamental norms underlying the sentencing process." Johnson's Brief at 9. However, he does not specify the sentencing guidelines recommendations for each of his five sentences, nor does he state where each sentence falls in relation to those guidelines. Furthermore, Johnson does not articulate how or why the

- 18 -

sentences violate a fundamental norm underlying the sentencing process. Based on these deficiencies, we conclude that Johnson failed to raise a substantial question for our review with respect to these claims.

In Johnson's third sentencing claim, he contends that the sentence imposed was excessive because the trial court failed to consider the gravity of the crimes, Johnson's criminal record, his potential for rehabilitation, and the "mitigating and aggravating factors of section 9721." Johnson's Brief at 9. Our Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (citation omitted). Additionally, we note the following:

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Id*. (citation omitted). We conclude that Johnson's challenge to the imposition of his aggregate sentence, together with his claim that the trial court failed to consider mitigating factors, presents a substantial question. Accordingly, we will review the merits of this claim.

Our standard of review of a discretionary sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019) (citation omitted).  "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Brown*, 249 A.3d 1206, 1217 (Pa. Super. 2021) (citation omitted).

> When imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant.  The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation.  However, where the sentencing judge had the benefit of a [PSI], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Clemat*, 218 A.3d at 959-60 (citation omitted).  "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Moury*, 992 A.2d at 171.

With respect to the imposition of consecutive sentences, we observe:

> Long standing precedent . . . recognizes that the Sentencing Code affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.  We will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently unreasonable."

- 20 -

*Commonwealth v. Brown*, 249 A.3d at 1212 (citations and brackets omitted).

Johnson argues that that the trial court imposed "the maximum sentence permitted by law for each charge on each docket number, then ordered that the periods of incarceration be served consecutively." Johnson's Brief at 23. He avers that "[i]n every instance, the court deviated from the guideline recommendation and used the highest end of the guideline range as the minimum sentence, while imposing the maximum period of time permitted by law as the maximum sentence." *Id*. He further argues that the trial court "only considered the nature of the offenses, without any consideration of the characteristics of [Johnson] or his rehabilitative needs" and did not identify "a rational basis for the substantial deviation from the guideline recommendations." *Id*.

The trial court considered Johnson's sentencing claim and determined it lacked merit. The court reasoned:

> [T]he [trial court] specifically stated that it considered the required statutory considerations (*i.e.*, the need for the protection of the public, gravity of the offense in relation to the impact of the victim's life and community, and the rehabilitative needs of . . . Johnson), the PSI, the investigation of the prior record score, and the sentencing memoranda submitted by the Commonwealth, excluding the prior arrest information contained therein as discussed early in the sentencing hearing. The [trial court] also considered the statements made by the Commonwealth and defense counsel, the statements made by . . . Johnson, the statements made on behalf of [the Victim], as well as [the Victim's] testimony during the trial, and the Commonwealth's sentencing guidelines.

The [trial court's] statements during the sentencing hearing demonstrate that it considered as much information as possible to understand the full picture of . . . Johnson's background, possible mitigating facts, and potential rehabilitative needs.

\* \* \* \*

The [trial court] properly considered the plethora of information available to it, both the positive and the negative, and crafted a sentence that was within the standard range of the guidelines.

Trial Court Opinion, 2/27/25, at 17-19 (citations omitted).

Upon review, we conclude that the trial court did not abuse its discretion when imposing its sentences. We first observe that the trial court imposed an aggregate sentence of 166 to 360 months' imprisonment and five years of probation. Contrary to Johnson's assertion that the trial court imposed "the maximum sentence on each docket number," each individual sentence was within the standard sentencing guidelines range. With respect to three charges — PIC, simple assault, and sexual assault — the trial court imposed standard range sentences where the maximum sentence imposed happened to coincide with the statutory maximum term. We reiterate that Pennsylvania law views sentences within the standard range of the guidelines as appropriate. **See Moury**, 992 A.2d at 171. We thus determine that the trial court acted within its discretion when it imposed consecutive sentences as the aggregate sentence was not "grossly disparate" to Johnson's conduct toward the Victim. **Brown**, 249 A.3d at 1212.

Furthermore, we observe that the trial court had the benefit of a PSI; therefore, we presume that it was aware of all relevant information regarding the sentencing factors and Johnson's background. *See Clemat*, 218 A.3d at 959-60. The trial court also considered the nature of the crimes, the victim's impact statement, counsel's arguments at sentencing, and Johnson's allocution. *See* Trial Court Opinion, 2/27/25, at 17-18. At sentencing, the court explained that the "protection of the public and the seriousness of these crimes weigh more heavily in the case than the rehabilitative factor," reasoning that Johnson's criminal history demonstrated an alarming trend of escalating each time he was released from prison. N.T., 3/25/24, at 40. We thus conclude that the trial court considered all relevant factors, including Johnson's rehabilitative needs, when it imposed an aggregate term of 166 to 360 months' imprisonment and five years' probation. Therefore, we discern no abuse of the trial court's discretion at sentencing. Accordingly, no relief is due on Johnson's final issue.

For the foregoing reasons, we conclude that none of Johnson's claims merit relief. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/9/2026</u>